## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Wanda Halphen Tesch                                Civil Action No. 09-1697

versus                                             Judge Tucker L. Melançon

The Prudential Insurance Co.                  Magistrate Judge Patrick J. Hanna
of America

### MEMORANDUM RULING

Before the Court are cross motions for summary judgment filed by plaintiff Wanda Halphen Tesch, [Rec. Doc. 23] and defendant, The Prudential Insurance Company of America ("Prudential"), [Rec. Doc. 24], plaintiff's Supplemental Memorandum in support of her Motion for Summary Judgment [Rec. Doc. 39] and Prudential's Supplemental Memorandum in support of its Motion for Summary Judgment [Rec. Doc. 41].  For the following reasons, the motion for summary judgment filed by plaintiff will be granted and the motion for summary judgment filed by defendant will be denied.

### I. Background

Plaintiff, Wanda Halphen Tesch, was employed by Bank One as an assistant manager and was a participant in a disability plan sponsored by Bank One and insured by Prudential under contract number G-56249 (the "Plan").  *Administrative Record, DO725, DO781.* Prudential served as the Plan Administrator and was vested with the discretion to review claims, interpret the Plan and make decisions regarding eligibility.[1]  The pertinent provisions of the Plan provided that "Total Disability" exists when the following conditions are met:

(1) Due to Sickness or accidental injury, both of these are true:

(a)      You are not able to perform, for wage or profit, the material and substantial duties of your occupation.

---

[1] The parties have jointly stipulated that the administrative record filed into the record of this matter is complete and that the Plan vests the Plan Administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan.  *R. 19.*

(b)     After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit the material and substantial duties of *any job* for which you are reasonably fitted by your education, training or experience.  The Initial Duration is shown in the Schedule of Benefits.

(2) You are not working at any job for wage or profit.

(3) You are under the regular care of a Doctor.

*DO725, 781.*

Thus, under section (1)(b), in order to continue receiving Long Term Disability (LTD) benefits under the Plan, an employee must be unable to perform the material and substantial duties of "any job" for which he or she is qualified based on "education, training or experience."

Plaintiff injured her neck and back in March 1998 when she slipped and fell down her stairs.  *D0486-489*.  Plaintiff was examined by Dr. John Cobb, an orthopaedic surgeon, on March 25, 1998 with complaints of tenseness and muscle spasms between her shoulders, aching in her lower back and right hip and leg.  *Id*.  She indicated that on a scale of 1-10, her pain was a "6" with a "10" at night.  *Id*.  Dr. Cobb ordered an MRI of her lumber spine and prescribed physical therapy, Lortab and Daypro.  *Id*.  Based on plaintiff's continued symptoms and marked collapse at the level of L4-5, Dr. Cobb recommended fixation and fusion of the L4-5.  *D0475-485*.  Dr. Cobb performed a fusion on plaintiff's L4-5 disc in August, 1998.  *Id*.  On September 11, 1998 plaintiff stopped working due to neck and lumbar pain.  *D0682*

On a June 2, 1999 visit to Dr. Cobb, plaintiff complained of significant pain in her neck and right shoulder as well as her tailbone.  *D0463*.  Plaintiff was evaluated by Dr. John E. Nyboer at the NeuroMedical Center on June 24, 1999, for head and neck pain radiating into her right arm and fingers.  *D0458-461*.  On September 13, 1999, Dr. Nyboer ordered an MRI of plaintiff's cervical spine and an x-ray of her lumbar spine.  The x-ray revealed that

2.

the fusion plate at her L4-5 level had become displaced.  *D0042-43.*  The cervical MRI revealed a posterior disc protrusion causing cord effacement and narrowing of the left lateral recess and neural foramen at the C5-6 level and a posterior disc protrusion causing mild stenosis at the C6-7 level.  *D0045-46.*  In an August 9, 1999 evaluation by Dr. Cobb, plaintiff continued to complain of lower back, neck and shoulder pain.  *D0452.*  Dr. Cobb indicated that surgical intervention may be indicated.  *Id.*

On January 5, 2000, plaintiff sought a second opinion from Dr. Jorge Isaza, an orthopaedic surgeon.  *D0022.*  Dr. Isaza ordered an x-ray and discogram be performed.  The x-ray confirmed a failed fusion and the discography revealed "a strongly positive L4-5 disk space," which Dr. Isaza interpreted as confirming her L4-5 pain, as well as degenerative disc disease.  *D0033, 0035.*  On April 27, 2000, Dr. Isaza performed plaintiff's second posterior lateral fusion and she continued under his care.

Plaintiff continued to complain of back pain and severe neck and shoulder pain, which began to affect her left arm.  *D0199-*2.  Dr. Isaza diagnosed C5-6 and C6-7 degenerative disc disease and prescribed Lortab and Skelaxinepidural steroid injections of her cervical spine. *Id.*  He ordered an MRI on March 28, 2001, which indicated C5-6 and C6-7 herniation.  *Id.* An MRI of plaintiff's cervical and spine was repeated on December 4, 2002.  *D00215.*  The radiology report indicated progressive disc protrusions/herniations at C5-6 and C6-7 with cord compression at both levels.  *Id.*

In his progress notes dated January 24, 2003, Dr. Isaza indicated that plaintiff continued to complain of neck pain radiating into both arms.  *D00216.*  He stated that she "explained that loss of coordination and pain makes her miserable" and prescribed at home cervical traction. *Id.*  Dr. Isaza completed an Attending Physician's Statement for Continuing Disability on July 22, 2003, indicating that plaintiff remained totally disabled from any

duties.   Dr. Isaza performed a cervical fusion on August 22, 2003.  *D0100.*  In October and December 2003, plaintiff continually complained of  severe cervical and upper back pain after being punched in the face and neck by her brother.[2]  *D0097-101.*  Dr. Isaza referred her for a rheumatology consultation with Dr. Gary Roberts to address her diffuse pain complaints.  *Id.*  Throughout 2004, plaintiff continued to complain of pain in her neck, right upper extremity, upper back, lower back and right lower extremity and Dr. Isaza continued to treat her conservatively and prescribe pain medication.  *D0190-195.*

In an office visit with Dr. Isaza on March 17, 2005, plaintiff complained of pain in her mid-back with continued neck pain.  *D0088-089.*  Dr. Isaza scheduled an MRI of her thoracic spine.  *Id.*  The MRI showed degenerative changes at T9-10 and T10-11.  *Id.*  On July 27, 2005, plaintiff was examined by Dr. Isaza complaining of severe low back pain radiating into both lower extremities and bilateral upper extremity pain.  *D008*7.  Dr. Isaza ordered a discogram of her lumbar spine.  *Id.*  In her November 14, 2005 office visit, plaintiff reported continued neck and back pain, primarily in her lower back with pain radiating into the left leg.  Dr. Isaza noted that two years after her successful fusion surgery, plaintiff began having progressive pain and presently was having difficulty sleeping and had to stop walking her usual two miles a day due to her symptoms.  *D0086.*  He noted that the discogram was positive at L5-S1 with an annular tear posteriorly.  *Id.*  Dr. Isaza stated, "Ms. Tesch is miserable" because of her pain.  *Id.*  On December 21, 2005, based on her positive discogram, Dr. Isaza recommended an artificial disc replacement.  *D0085.*

In his evaluation dated March 10, 2006, Dr. Isaza indicated plaintiff's complaints of low and mid-back pain.  *D0084.*  Noting that plaintiff wanted to wait as long as possible

---

[2] Dr. Isaza's Clinical Notes provide that following a 2003 altercation with her brother, plaintiff developed "more problems."  *D0095.*  Prior to that time, plaintiff had indicated that "for the first two years after her [2000] lumbar fusion, she did great."  *D0086.*

before any further surgery, the plan was for plaintiff to continue to be active.  *Id.*  On March 13, 2006 Dr. Isaza referred Tesch to Dr. Gray W. Barrow, a Physical Medicine and Rehabilitation specialist, for pain management.  *D0083.*  In plaintiff's initial office visit on June 13, 2006, Dr. Barrow diagnosed plaintiff with chronic cervical pain and chronic lumbar pain with radiculopathy.  *D. 284-285*.  He prescribed Oxycontin, Norco and Soma.  *Id.*  For the remainder of 2006, plaintiff indicated she continued to have severe low back pain as well as neck and right shoulder pain but that she wanted to wait on a surgical option and continue her pain medications.  *D0080-084.*

On January 18, 2007, Dr. Isaza performed an artificial disc replacement of plaintiff's L5- S1.  *D007*9.  In March 2007, Dr. Isaza recommended that plaintiff begin some stretching and walking - starting off very slowly "as it would be easy for her to overdo things."  *D007*8.  Plaintiff continued to have unchanged back pain throughout 2007 and Dr. Isaza's records indicate that she "seems sad."  In May, 2007, Dr. Isaza ordered a myelogram and CT of her lumbar spine.  *D0076.*  The myelogram showed a central bulge at L3-4 with a central disc herniation at L4-5.  *Id.*  Dr. Isaza continued her physical therapy, home TENS unit and medications.  *D0064.*  On September 6, 2007, noting that plaintiff's low back pain radiated into her lower extremities to her feet, Dr. Barrow ordered an MRI of plaintiff's thoracic spine.  *D0283.*  The MRI revealed "diffuse degenerative disc disease most pronounced at T10-11" *Id.*  On October 3, 2007, Dr. Barrow performed a steroid injection into plaintiff's T11-12 interspace.  *Id.*

On March 14, 2008 Dr. Isaza, ordered an MRI of plaintiff's cervical spine which revealed a disc bulge at C7-T1.  *D0050.*   Plaintiff's follow-up examinations indicated no improvement in her neck, upper and lower back  and leg pain and also reported pain shooting from the mid-back into the anterior chest.  *D0050-52.*  Dr. Isaza indicated that he wanted her

5.

to remain active and to continue with conservative care.  *Id.*  On May 21, 2008, noting that plaintiff continued to complain of low back pain radiating into her lower extremities, Dr. Barrow injected her L5 and stated that he would consider injecting her S1 in the future. *D0281.*

Plaintiff received long-term disability benefits from Prudential due to her back surgery from March 1, 1999 through March 31, 2002.  *D0731.*  She also received long-term disability benefits for a closed period covering April 1, 2002 through June 30, 2002 due to a leg fracture.  *D0678.*  Ultimately, plaintiff's "LTD benefits were approved for the period March 1, 1999 through June 30, 2002 and her claim was terminated effective July 1, 2002." *D0682.*  It is undisputed that "as a condition of the policy, [plaintiff] was made to apply for disability benefits with the  Social Security Administrative ("SSA").  [Plaintiff] was denied and was then directed by Prudential to appeal the decision."  *R. 39.*  On September 22, 2000, considering plaintiff's application of March 15, 1999, the SSA Law Judge determined that plaintiff was entitled to disability commencing on September 10, 1998.  *D0398-0401.*  The Administrative Law Judge's conclusion that plaintiff had the severe impairments of an L4-5 failed back syndrome and L5-S1 herniated discs was based upon plaintiff's medical records from Dr. Isaza, the fact that she was awaiting back surgery, and plaintiff's own assertions that she could not perform any work on a sustained or realistically sustained basis and could not persist for a full eight hour work day; therefore limiting the range of work she could perform.  *Id.*

On February 12, 2002, Prudential informed plaintiff that her medical records from Dr. Isaza indicated that the initial period of benefits as defined in (1)(b) of the Plan ended on February 28, 2001because she was not totally disabled from performing any occupation. *D0732-33.*  Prudential noted, in particular, that despite her complaints of stiffness and

intermittent irritation in her shoulder and left arm, Dr. Isaza found that she had full range of motion of the cervical spine, her motor function was preserved in both upper extremities, her reflexes were slightly decreased and her straight leg testing and sensory were normal.  *Id.*  Although noting that there was some tenderness of the muscles of the cervical spine and that plaintiff was scheduled to have an epidural injection, Prudential determined that these symptoms of tenderness did not support an inability to perform the substantial duties of a sedentary occupation.  Prudential further stated that plaintiff's benefits would continue through March 31, 2002 because "a measure of assistance" had been authorized, but that her claim would terminate effective April 1, 2002.  *Id.*  Finally, Prudential informed plaintiff that due to her award of Social Security Disability Benefits, she had an outstanding overpayment balance on her LTD claim in the amount of $15,202.00.  *D0733.*  Prudential advised plaintiff to send a personal check for the full amount.  *Id.*  A return envelope was provided for plaintiff's "mailing convenience."  *Id.*

On March 4, 2002 plaintiff requested that Prudential reconsider the decision to terminate her benefits.  *DO725-26.*  In a March 28, 2002 letter to plaintiff upholding its decision, Prudential stated that Dr. Isaza's November 2, 2001 Attending Physician's Statement indicating plaintiff could not work was contrary to plaintiff's physical examination as well as her March 27, 2001 MRI which remained unchanged from September, 1999.  *Id.*

On May 17, 2002, plaintiff filed her second appeal claiming disability due to headaches, neck pain, back pain, shortness of breath, and osteoarthritis.  *D0184.*  In reevaluating plaintiff's eligibility, Prudential requested that plaintiff submit to an independent medical examination by Dr. Thomas LaBorde, a board certified specialist in Physical Medicine and Rehabilitation.  *D0157.*  Upon physical examination, Dr. LaBorde noted that plaintiff characterized her pain as severe with constant neck pain radiating into the

upper extremities and persistent low back pain with occasional radiating pain into the lower extremity.  *D0156*.  She characterized her average pain intensity as 7 out of 10 with her most severe pain 8 out of 10 and stated that she was unable to continue working because of her persistent pain.  *Id*.  LaBorde opined that while he believed that "presently on a historical basis, [plaintiff] seems to be able to tolerate light/sedentary levels of physical activity," he recommended that she be given a "formal functional capacity evaluation to provide better documentation of [her] more realistic physical limitations."  *D0158*.  Citing Dr. LaBorde's report and an unidentified "transferable skills analysis," Prudential upheld its decision to terminate plaintiff's long term disability benefits on September 25, 2002.  *D0712-714*.

On August 12, 2003, plaintiff's counsel advised Prudential that plaintiff was filing a third appeal and that additional medical information would be forthcoming.  *D0626*.  Plaintiff retained new counsel at some point between June 24, 2008 and November 4, 2008.  *D0685-86*.  On November 4, 2008, Prudential advised plaintiff's new attorney that her third request for reconsideration had been received.  *D0685*.

The record contains correspondence dated November 24, 2008 from plaintiff's new counsel to Dr. Isaza requesting that Dr. Isaza fill out a checklist stating six choices as to plaintiff's "current medical conditions" and related restrictions.  *D0308-309*.  Dr. Isaza checked all of the choices, including the one indicating that plaintiff was unable to perform her occupation because of her medical condition, and wrote "L4-5 fusion, ACF C5-6 C6-7, P [illegible] F L4-5 &  [illegible] L5-S1. Patient is totally and permanently disabled. She is not able to perform any kind of job."[3]  *Id*.  On November 24, 2008, plaintiff's counsel also submitted identical correspondence to Dr. Gray W. Barrow, Louisiana Spine & Sports

---

[3] The record also indicates that Dr. Isaza was sent the identical checklist via correspondence dated August 20, 2004.  *D0308-09*.  Dr. Isaza also checked all six of the choices on the checklist.  *D0311-312*.

Medicine, who treated plaintiff from June 13, 2006 through 2008.  *D00281-0296*.  Dr. Barrow checked all the choices and wrote "S/P C5-6, 6-7 Fusion. S/P L 4-5, L5-S Fusion. Thoracic [illegible]."  *D0104-05*.

In considering plaintiff's third request for reconsideration of its 2002 decision, Prudential engaged Reliable Review Services (RRS) to arrange for a physician to review plaintiff's file.  *D0682,683*.  On January 7, 2009, plaintiff's medical records were reviewed by Dr. Richard Kaplan, board certified in Physical Medicine and Rehabilitation and Pain Management.  *D0123-133*.  In addition to outlining plaintiff's medical records, Dr. Kaplan noted that the SSA issued a favorable decision on September 22, 2000 based on evidence by Dr. Isaza but opined that the ruling "was not supported by the standard of care."  *Id*.  While Dr. Kaplan's assessment found that plaintiff's functional impairment from July 1, 2002 through the present was supported, he stated that "the medical records do not support an anatomical basis for her past multiple surgeries."  *Id*.  He concluded that plaintiff was capable of working with certain restrictions and limitations which included lifting up to 5 pounds frequently or 10 pounds occasionally, avoiding climbing, bending, twisting, squatting or stooping and changing positions for one minute each hour.  *Id*.  In noting that the recommended restrictions represented plaintiff's "minimum recommended level of physical activity," not the maximum, Dr. Kaplan stated,

> Restricting the claimant from any work whatsoever is unsupported by the medical records and in fact has been contraindicated for many years.  It appears the claimant has in fact developed an iatrogenic impairment on this basis of de-conditioning.  Recently, Dr. Isaza noted on September 22, 2008 that he wanted to keep the claimant "very active."

*D0130-131*.

Based on "all of the information in [plaintiff's] file including the documentation submitted for the purposes of [plaintiff's] appeal," Prudential agreed with Dr. Kaplan's

opinion of plaintiff's medical condition and upheld its decision to terminate plaintiff's claim effective July 1, 2002.  Prudential denied plaintiff's third appeal on January 20, 2009.  *D0677-80.*    Plaintiff filed a verified Petition against Prudential on August 4, 2009 in the Sixteenth Judicial District Court, St. Martin Parish, Louisiana.  *R. 1.*  The case was removed to this Court on August 28, 2009.  *Id.* Pursuant to the Court's ERISA Scheduling Order, *R. 9*, the parties filed cross motions for summary judgment on June 28, 2010.  *R. 23; R. 24.*   In her motion, plaintiff seeks reimbursement of past and future physical disability benefits and reasonable attorney's fees.  *R. 23.*

On December 20, 2010, the Court issued an order administratively terminating this action in order for plaintiff's counsel to depose her treating physicians, Dr. Jorge Isaza and Dr. Gray W. Barrow, and to submit the transcripts of their depositions to Prudential's Plan Administrator.  *R. 31.*  In its Order, the Court expressed confusion with Dr. Kaplan's opinion that, despite the medical records supporting plaintiff's functional impairment from July 1, 2002 through the present and "extremely complex history" having "undergone multiple spinal surgeries in the cervical and lumbar region for a diffuse pain syndrome," "the medical records do not support an anatomical basis for [plaintiff's] past multiple surgeries" because she had "an iatrogenic impairment" caused by de-conditioning.  *D0124, 130-131.*  As the administrative record contained only written accounts of plaintiff's medical examinations, test results and her physicians' opinions that she was unable to return to work, as set out hereinabove, the Court's intent in administratively closed the case was for plaintiff's counsel to clarify the administrative record.  The Court further ordered that the attorneys for the parties were to file a joint motion to reopen the case within ten days after the Plan Administrator's ruling if the matter was not resolved after the Plan Administrator had the

opportunity to consider Dr. Isaza and Dr. Barrow's deposition testimony.  *R. 31.*   The attorneys were further ordered to submit supplemental memoranda thereafter.  *Id.*

Dr. Jorge Isaza was deposed on January 19, 2011, *D0923-24*, and Dr. Gray Barrow's deposition was taken on February 22, 2011, *D0926*.  On April 13, 2011, Prudential contracted with, Dr. David Trotter, a specialist in orthopedic surgery, to prepare a third review of plaintiff's medical records.  *D0934-945.*  On May 25, 2011, Prudential notified plaintiff that it had completed its review and determined that the decision to terminate her disability benefits was upheld.  Thereafter, on June 6, 2011, the attorneys filed their joint motion to reopen the case, *R. 36*, the case was reopened on June 9, 2011, *R. 37*, and the attorneys submitted their supplemental memoranda, *R. 39, 41*.

## II.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56;  *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (*en banc*).  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*.  If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for

trial.[4] *Id*. at 322-23.  Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial.  *Celotex Corp*., 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).  There must be sufficient evidence favoring the non-moving party to support a verdict for that party.  *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

   If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.  Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party.  *Id.*

### III.  Standard of Review - ERISA Claims

   The Fifth Circuit has held that when "a plan grants the administrator discretionary authority to determine claims for benefits, claimants may recover under ERISA only if the administrator's rejection of their claim was an abuse of discretion."  *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395 (5th Cir.2006). In this case, the Plan at issue grants the Plan Administrator discretionary authority to interpret the terms of the Plan and to determine

---

[4] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325.  To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial.  *Id.* at 322.

eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Accordingly, review for abuse of discretion is the appropriate standard to be used by this Court in evaluating plaintiff's claim and the action taken by defendant in connection therewith.

In the context of ERISA, the abuse of discretion standard of review "is the functional equivalent of arbitrary and capricious review." *Anderson v. Cytec Industries, Inc*., 619 F.3d 505, 512 (5th Cir. 2010). A decision is arbitrary if it is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828 (5th Cir.1996). Furthermore, an administrator must have "substantial evidence" to support its decision to deny or terminate benefits. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 274 (5th Cir.2004). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 273 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir.1986)).

In *Metropolitan Life Insurance Company v. Glenn*, 128 S.Ct. 2343 (2008), the Supreme Court stated that a structural conflict of interest created by the plan administrator's dual role in making benefits determinations and funding the benefit plan "should be taken into account on judicial review of a discretionary benefit determination." *Id*. at 2350. In considering the Court's ruling in *Glenn*, the Fifth Circuit has stated:

> If the administrator has a conflict of interest, [the court should] weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial, meaning [the court should] take account of several different considerations of which conflict of interest is one.

*Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 (5th Cir .2009) (internal quotations omitted); and,

13.

> In reviewing the plan administrator's decision, we take into account ... several different considerations. These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. Any one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

*Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010).

## IV.  Analysis

Plaintiff disputes Prudential's findings and argues that Prudential and its physicians arbitrarily disregarded her treating physician's opinions, which were based on objective medical evidence in the record, because they were acting under a conflict of interest. Plaintiff contends that her complaints of pain and functional limitation are in fact supported by extensive objective medical evidence in the record, such as MRI reports of her cervical, thoracic and lumbar spine, CT scans, discograms and a number of spinal surgeries. In further support of her argument, plaintiff points to the Social Security Administration's decision finding that she is disabled and, as a result, eligible to collect benefits under the terms of that program.

Prudential contends for the first time in its Supplemental Memorandum that the Court's remand was unnecessary and Prudential's decision should be affirmed based on the record submitted on February 25, 2010.  *R. 41.*   In evaluating the plan administrator's decision, "when assessing factual questions, the district court is constrained to the evidence before the plan administrator."  *Vega v. Nat. Life Ins. Services, Inc.*, 188 F.3d 287, 295 (5th Cir.1999).  A court may not "stray from the [administrative record] but for certain limited exceptions, such as the admission of evidence related to how an administrator has interpreted terms of the plan in other instances, and evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a claim.  Thus, the administrative record consists of relevant information made available to the administrator

14.

*prior to the complainant's filing of a lawsuit* and in a manner that gives the administrator a fair opportunity to consider it." *Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516 (5th Cir.2000) (emphasis added). The Court ordered the depositions of plaintiff's treating physicians to clarify their positions related to plaintiff's medical records in an effort to assist Prudential in evaluating plaintiff's claim and, in the event a motion was filed to reopen the case after the depositions were taken and considered by Prudential, to assist the Court in its evaluation of plaintiff's treating physicians' opinions of plaintiff's ability to perform any type of gainful employment. In light of Prudential's objection, the Court will base its decision solely on the administrative record as it existed on March 04, 2010, *R. 17*, without reference to or reliance on the depositions of Dr. Isaza and Dr. Barrows or the report of Dr. Trotter.[5]

In her Supplemental Memorandum, plaintiff repeats her contention that because Prudential as the Plan Administrator determined both whether plaintiff was eligible for benefits and also paid disability benefits out of its own pocket, it should be deemed conflicted under *Glenn*, 128 S. Ct. at 2350. *R. 39.* Citing *Schexnayder*, 600 F.3d at 469, in which The Hartford was both plan administrator and insurer under facts similar to those in this case, plaintiff asserts that the circumstances in this case establish a "structural conflict of interest" and create "a more significant factor" to be considered by the Court. The Court agrees. *R. 39.* When the plan administrator "both evaluates claims for benefits and pays benefits claims," the Court must weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial. *Glenn,* 128 S.Ct. 2348-2350. "Failure to address a contrary SSA award can suggest 'procedural unreasonableness' in a

---

[5] The Court is perplexed by Prudential's decision to hire a third medical expert, Dr. Trotter, to perform another file review of plaintiff's records in light of the position it now takes - that consideration by the Court of anything not included in the administrative record entered on March 04, 2010, *R. 17*, would be improper.

plan administrator's decision.  This procedural unreasonableness is important in its own right and also 'justifie[s] the court in giving more weight to the conflict.'"  *Schexnayder* at 471(citing *Glenn* at 2352).

Accordingly, the Court will consider the conflict as well as the following circumstances surrounding the Plan Administrator's decision as factors in determining whether Prudential's decision suggests procedural unreasonableness.

### B.  Whether Prudential Acted Arbitrarily And Capriciously

#### 1.  Social Security Disability Determination

Although Social Security determinations are not binding upon a plan administrator, they are "relevant and instructive" in a court's determination of whether a plan administrator acted arbitrarily and capriciously.  *Adams v. Metro. Life Ins. Co.*, 549 F.Supp.2d 775, 789 (M.D.La.2007) (J. Brady); *see also Schully v. Continental Cas. Co.*, 634 F.Supp.2d 663, 685 (E.D.La.2009) (J. Fallon) ("[T]he Social Security Administration's decision that plaintiff is entitled to recover disability benefits, while only a single factor in the Court's overall analysis, is at least persuasive evidence of plaintiff's condition and should be considered.").

In *Glenn v. MetLife*, 461 F.3d 660, 666-67 (6th Cir.2006), which was affirmed by the United States Supreme Court in *Metropolitan Life Insurance Company v. Glenn*, 128 S.Ct. 2343 (2008), the Sixth Circuit found that a district court had given "inadequate consideration" to the Social Security Award Determination of disability.  There, MetLife encouraged the plaintiff to apply for SSA benefits and then deducted the amount of those benefits from its payment obligations once Social Security Disability Insurance benefits were awarded.  Yet, in deciding to terminate payments under the MetLife policy, "the plan administrator gave no weight to the Social Security Administration's determination of total disability."  *Id*. at 667.  The court concluded that the plan administrator reaped a dual victory.  First, the SSA's

16.

determination of disability reduced the plaintiff's claim against the employee welfare plan. Then, the plan administrator reaped a second victory by denying that the plaintiff was disabled under its plan. *Id.* at 667-68.[6]  The court found that the inconsistent positions should be taken into account and concluded that "having benefitted financially from the government's determination that Glenn was totally disabled, MetLife obviously should have given appropriate weight to that determination." *Id.* at 669.  The court further noted that "an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Id.*

In this case, the SSA found that plaintiff was totally disabled from performing any work and issued disability benefits on September 22, 2000.  *D0398-0401.*  The SSA concluded that after considering plaintiff's "own subjective allegations" and finding "them generally credible in light of the evidence of the record" which indicates severe impairments of an L4-5 failed back syndrome and L5-S1 herniated discs, "plaintiff is unable to persist for a full 8-hour workday" and she "cannot make an adjustment to any work that exists in significant number in the national economy." *Id.*

In his report to Prudential, Dr. LaBorde neither mentioned nor cited the SSA's findings, suggesting that he gave no weight to the decision or that he did not know about it. *D0155-158.*  While the record reflects that Prudential was aware of plaintiff's successful SSA ruling in that it instructed her to repay $15,202.00 in overpayment of her LTD benefits

---

[6] The Supreme Court agreed with the Sixth Circuit's appraisal of MetLife's conflict and stated, "[i]n such a circumstance, "every dollar provided in benefits is a dollar spent by ... the employer; and every dollar saved ... is a dollar in [the employer's] pocket." *Glenn,* 554 U.S. at 128.

in light of the award, Prudential also failed to make any mention of the favorable ruling in denying plaintiff's second appeal. *D0712 - 0714.*

The record further reflects that Dr. Kaplan's only reference to plaintiff's favorable ruling was that plaintiff's SSA ruling "appears to be based largely upon evidence from Dr. Isaza that the claimant was unable to work for a full eight hour work day in any capacity at all. In my opinion, such an opinion by Dr. Isaza is unsupported by the standard of care." *D0131.*   Although Prudential's denial letter of plaintiff's third appeal mentioned Dr. Kaplan's disagreement with the SSA's decision, Prudential provided no reasoning as to why it chose to rely on Dr. Kaplan's complete dismissal of the favorable decision.

A SSA determination of disability is made by an impartial administrative law judge. The judge must be satisfied that the claimant suffers from a severe impairment and in light of the claimant's age, education, and work experience, she cannot make an adjustment to any other work. *See* 20 C.F.R. § 416.920.   Based on the administrative record before the Court, the Court must conclude that Prudential failed to consider the Social Security Administration's finding of disability in reaching its own determination of disability.   Prudential's failure to consider the SSA's finding of disability "does not render the decision arbitrary per se, but it is obviously a significant factor to be considered upon review." *See, Glenn* at 669. Thus, the Court will consider in its determination of whether the Plan Administrator acted arbitrarily and capriciously that, an impartial administrative agency concluded that the plaintiff was totally disabled from any occupation; Dr. LaBorde did not address the SSA's ruling in forming his opinion; Prudential did not address the SSA's ruling in its second denial; and Prudential failed to provide any reasoning in dismissing the SSA's ruling without any consideration other than to note Dr. Kaplan's disagreement with the decision. *See*, *Schully* at 685.

18.

### 2.  *Medical Evidence - Treating Physician versus File Review*

In response to plaintiff's second appeal, Prudential contracted Dr. LaBorde to examine plaintiff and provide an independent medical evaluation.  Dr. LaBorde's examination revealed chronic pain in her neck, shoulder, arm, low back, hip and leg with "possible discogenic or radicular components."  While stating that, based on a historical basis, plaintiff "seems to be able to tolerate light/sedentary levels of physical activity," he recommended that she be scheduled for "[a] more formal functional capacity evaluation [to] provide better documentation of more realistic physical limitations" because he found it "difficult to precisely identify the underlying cause" of plaintiff's ongoing subjective complaints.  *D0158*.  In denying plaintiff's second appeal, Prudential ignored Dr. LaBorde's recommendation that a formal functional capacity evaluation be performed and stated only that Dr. LaBorde "opined that you would be able to tolerate sedentary to light levels of activity."  *D0713-714*.

Prudential contracted Dr. Kaplan to perform a file review in response to plaintiff's third appeal.  Dr. Kaplan stated in his report that plaintiff had "an extremely complex history" and had "undergone multiple spinal surgeries in the cervical and lumbar region for a diffuse pain syndrome."  *D0132*.  Based on his review of plaintiff's medical records, however, he opined that "the medical records do not support an anatomical basis for her past multiple surgeries" *D0132-133*, and that it was "arguable" as to whether plaintiff's "surgical procedures were in fact indicated since the medical records do not indicate that there were any clear focal musculoskeletal or neurological deficits being addressed by the claimant's complaints" *D0131*.  Finding that plaintiff's impairments were "in large part iatrogenic[7]"

---

[7] Dorland's Illustrated Medical Dictionary (25th ed. 1974) defines "iatrogenic" as referring to "any adverse condition in a patient occurring as a result of treatment by a physician."

*D0132*, created by medical treatments which were not indicated, *D0131*, and that Dr. Isaza's opinions were unsupported, *id.*, Dr. Kaplan concluded that plaintiff should return to work.

In denying plaintiff's third appeal, *D0677-0680*, Prudential relied exclusively on Dr. Kaplan's file review report of plaintiff's medical records in stating that: (1) the SSA's ruling was "not at all supported by the standard of care," *D0678*; (2) "the medical evidence does not support Ms. Tesch's reported level of severity of her conditions," *D067*9; (3) "it was arguable at this point whether Ms. Tesch's surgical procedures were in fact indicated" given her subjective complaints and diffuse symptoms and "extremely unlikely that a surgical approach would be effective," *id.*; and (4) restricting plaintiff from working a full eight hour day was contraindicated given her iatrogenic impairment, *id*. Prudential provided no independent reasoning as to its complete dismissal of plaintiff's medical records and history. *D0677-0680*.  Prudential did not attempt to reconcile Dr. LaBorde's previous finding that plaintiff had chronic pain resulting from possible discogenic or radicular components nor the documentation demonstrating plaintiff's structural spinal problems as shown by the MRI's, discograms and CT scans performed prior to her surgeries.

A plan administrator's decision to have an independent physician to conduct a file review rather than a physical examination is not per se arbitrary.  *Gooden v. Provident Life & Accident Ins.*, *Co.*, 250 F.3d 329, 335 (5th Cir.2001).  In *Gooden*, the Fifth Circuit held that the plan administrator did not abuse its discretion by relying upon the assessment of a physician who had not examined the plaintiff. *Id*. at 335.  There, the medical consultant stated that the plaintiff's condition of angina and coronary artery disease could be verified from the objective medical information.  *Id.*  In this case, however, plaintiff's treating physician, Dr. Isaza, found that her impairments were based, to a great extent, on her subjective complaints of severe pain which were confirmed by MRI's, CT scans and

discograms - all of which was confirmed by Dr. LaBorde's independent medical examination.

The Court notes that disabilities of the spine causing significant pain have been the basis for several ERISA claims within this circuit. *See, Schully* at 681.  In *Schexnayder v. CF Industries Long Term Disability Plan for its Employees*, 553 F.Supp.2d 658 (M.D.La.,2008) (J. Brady), aff'd in part, rev'd in part on other grounds, 600 F.3d 465 (5th Cir. 2010), the plaintiff sought disability benefits under his employer's ERISA plan for a back injury that prevented him from returning to work.  *Id*. at 660. Relying on the findings of its own retained physicians, the employer's plan administrator, The Hartford, denied benefits because it found plaintiff's "complaints of pain to be subjective and 'not consistent' with the objective findings."  *Id*. at 666. The district court disagreed, finding that the plaintiff's subjective complaints of pain were corroborated by substantial objective medical evidence, including, in particular, an MRI revealing that plaintiff suffered from "laminectomary and significant stenosis in the lumbar spine." *Id*. After reviewing the entire medical record, the court reversed the denial of benefits on the grounds that the plan administrator had "abused its discretion in discounting the subjective evidence of [p]laintiff's pain and the objective evidence corroborating the disability."  *Id*. at 667.  As the court explained, "[a]lthough pain cannot always be objectively quantified, [plaintiff's] pain is corroborated by medical evidence finding degenerative disc disease and spinal stenosis and notations of pain ... The [plan administrator] abused its discretion in discounting the subjective evidence of Plaintiff's pain and the objective evidence corroborating the disability."  *Id*.  Even though the plan administrator was free to offer credible evidence refuting the plaintiff's subjective complaints of plain, the *Schexnayder* court found it had abused its discretion in part because it had

simply failed to consider the plaintiff's reported symptoms.  *Id*.  As the court stated, a claimant's "[a]ccounts of pain cannot be ignored."  *Id*.

Similarly, in *Burdett v. Unum Life Insurance Company of America*, 2008 WL 4469094 (E.D.La., 2008) (J. Duval), the district court reversed a plan administrator's denial of physical disability benefits under ERISA in part because the administrator had reached its decision by relying exclusively on the opinions of its own physicians, none of whom had ever treated the plaintiff in person. In addition, the plan administrator had simply disregarded as unreliable the opinions of the plaintiff's treating physicians.  *Id*.  The *Burdett* court explained:

> In stacking the evidence, [p]laintiff has presented objective medical evalua-
> tions that confirm her condition and pain that she is experiencing. She
> provided proof of medical tests, including an MRI, an EMG, and a lumbar
> myelogram, all of which confirmed that [p]laintiff suffered from objective
> disabilities. She also provided proof of surgeries that were designed to
> alleviate her condition, although they were not entirely successful and
> resulted in further complications, including a spinal leak.

*Id*. at *11. In finding that the plan administrator had abused its discretion in denying benefits, the court also noted as persuasive two additional factors: first, that the Social Security Administration had granted the plaintiff disability benefits; and second, that the plan administrator was acting under an inherent conflict of interest because it both determined eligibility and paid benefits based on those determinations.  *Id*.  The court noted that the plan administrator's almost wholesale disregard for the opinions of plaintiff's treating physicians suggested the presence of an increased level of bias, thus warranting the application of a slightly less deferential standard in the court's review of the benefits denial.  *Id*., *see Schully* at 682.

Finally, in *Audino v. Raytheon Co. Short Term Disability Plan*, 129 Fed.Appx. 882, 885 (5th Cir. 2005), the Fifth Circuit found an abuse of discretion because the administrator

ignored the claimant's consistent complaints of pain as subjective, minimized or ignored objective evidence of disability corroborating those complaints, and concluded that the evidence did not show an inability to do her job functions without analyzing the effect that her conditions would have on her ability to perform her specific job requirements. *Id.* at 885.

Like the plan administrators in the foregoing cases, Prudential ignored Dr. LaBorde's recommendation that a functional capacity evaluation be performed to objectively access plaintiff's physical capacity in light of her subjective complaints, and ultimately adopted Dr. Kaplan's opinion *in toto* that plaintiff's surgeries were not warranted and gave no reasons for discounting plaintiff's diffuse subjective complaints, objective test results and her treating physicians opinions. While Prudential was free to discredit plaintiff's subjective complaints, the record provides no basis to challenge plaintiff's subjective accounts of her severe pain or the test results and medical opinions that have documented her pain. Instead, Prudential relied entirely on Dr. Kaplan's file review in which the plaintiff's accounts of pain and supporting test results were discounted altogether.

After a review of the administrative record under the abuse of discretion standard, limited strictly to the administrative record filed on March 4, 2010, *R. 17*, the Court gives weight to the following factors: (1) plaintiff consistently reported complaints of severe pain; (2) plaintiff's treating physician, Dr. Isaza, found that she had medically necessary restrictions and limitations with self-reported symptoms which were consistent with her medical test results; (3) plaintiff was considered totally disabled under the higher standard of the SSA[8]; (4) neither Dr. LaBorde nor Prudential  considered or evaluated the SSA determination of disability in plaintiff's second appeal; (5) Prudential did not consider Dr.

---

[8] The Court recognizes that unlike the legal standards governing social security benefits, which require efficient administration of a nationwide program, ERISA is designed to give employers wide leeway. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832-833 (2003).

LaBorde's recommendation that a functional capacity evaluation be performed; (5) relying on a file review, Dr. Kaplan opined that the SSA's favorable ruling "was not supported by the standard of care," plaintiff's subjective complaints of pain were "not consistent" with the medical evidence, plaintiff's medical and surgical intervention by Dr. Isaza was "unsupported" and plaintiff's condition was due to an iatrogenic impairment;[9] and (6) in plaintiff's third appeal, Prudential accepted Dr. Kaplan's opinion in toto without further reasoning, and discounted plaintiff's extensive medical documentation, her favorable SSA ruling, her subjective complaints and Dr. Isaza's assessment of them.[10]

Based on the Court's review of the administrative record, Prudential's conclusions do not reflect a rational connection between the known facts and the decision to deny benefits. In light of the foregoing, as well as the weight given to Prudential's conflict of interest, the Court finds Prudential abused its discretion in denying plaintiff's claims for disability benefits.

### V.  Attorney's Fees

In addition to seeking an award of disability insurance benefits, plaintiff requests an award of attorney's fees and costs pursuant to ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1).  Section 502(g), 29 U.S.C. § 1132(g)(1), provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."   The award of attorney's fees

---

[9]  *See Calvert v. Firestar Finance, Inc.*, 409 F.3d 286, 296-297 (6th Cir. 2005) (taking into account that the physician who concluded that the plaintiff's claims of subjective pain were not credible had never met or examined the plaintiff).

[10] Notwithstanding that plan administrators can choose between conflicting opinions, they "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Nord* at 834.

depends on the facts of each case. As the Fifth Circuit has instructed, "[t]he following five factors [are] enumerated for consideration in ERISA cases when shifting attorney's fees:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of attorney's fees;
> (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' position.

*Id*. at 542 n. 6 (quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)).  "No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g)."  *Bowen* at 1266.  "In sum, when considering a request for attorneys' fees under § 502(g) of ERISA, the court should consider and explicate the five *Bowen* factors, and should do so without giving predominance or preclusive effect to any one of them; and the court should also consider relevant non- *Bowen* factors, if there are any." *Riley v. Administrator of Supersaver 401K Capital Accumulation Plan for Employees of Participating AMR Corp. Subsidiaries*, 209 F.3d 780, 782 (5th Cir. 2000).[11]  The Court will therefore address each of the *Bowen* factors in turn.

---

[11]  Recently, in *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2157–58 (2010), the Supreme Court held that an ERISA statutory fee award is not limited to a "prevailing" party, but that fees and costs may be awarded to a party that has achieved "some degree of success on the merits." The Fifth Circuit subsequently commented that in the wake of *Hardt*, "[a] district court may consider the five factors, but *Hardt* does not mandate consideration." *1 Lincoln Financial Co. v. Metropolitan Life Ins. Co.*, 428 Fed. Appx. 394, 396 (5th Cir. 2011) (unpublished), citing *Hardt*, 130 S.Ct. at 2158 ("Because these five factors bear no obvious relation to § 1132(g) (1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.") & n. 8 ("We do not foreclose the possibility that once a claimant has [shown that he has achieved 'some degree of success on the merits'], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors ... in deciding whether to award attorney's fees.").

As to the first *Bowen* factor, the degree of the opposing parties' culpability or bad faith, the mere fact that the Court has found that Prudential had a conflict of interest as the Plan Administrator who was charged with evaluating plaintiff's entitlement to receive disability benefits and having to fund the payment of those benefits and that it abused its discretion in denying plaintiff's disability benefits does not in and of itself establish that Prudential acted in bad faith. In determining whether Prudential acted in bad faith, there is no way of looking into the mind or the minds of the ultimate decision maker or makers acting on Prudential's behalf. The Court must look at the administrative record as to what was done or not done. In concluding that Prudential abused its discretion, i.e. acted arbitrarily and capriciously, *Anderson* at 512, in denying Tesch disability benefits, the Court found that Prudential deliberately ignored overwhelming objective medical evidence supporting plaintiff's complaints of chronic and debilitating back and neck pain, including multiple MRI's, discograms and CT scans performed by plaintiff's treating physicians Dr. Isaza and Dr. Barrow. Although Dr. Kaplan, Prudential's second retained physician had never examined plaintiff in person and never spoke to  Dr. Isaza or Dr. Barrow, he nevertheless summarily dismissed plaintiff's complaints of pain, the supporting opinions of her treating physicians and the IME of Dr. LaBorde, Prudential's first retained physician who actually examined Tesch, and opined that Dr. Isaza's lengthy and extensive treatment of plaintiff for more than eight years was unwarranted. In concluding that plaintiff was not disabled, Prudential not only disregarded the considerable and compelling subjective and objective medical evidence, it relied solely on Dr. Kaplan's opinion, providing no independent reasoning as to its complete dismissal of plaintiff's medical records and history.[12] Prudential

---

[12]  The Court finds it most curious that prior to making an objection to the Court's remand of this matter to depose plaintiff's treating physicians, Prudential found it necessary to retain yet a third
(continued...)

made no attempt to reconcile the finding by Dr. LaBorde that plaintiff had chronic pain resulting from possible discogenic or radicular components and ignored Dr. LaBorde's recommendation that plaintiff be given a formal functional capacity evaluation.  Significantly, Prudential failed to independently explain its reasons for completely discounting plaintiff's favorable ruling by the Social Security Administration. Dr. Kaplan, however, from a view of Tesch's medical records, concluded that the Social Security award of disability "was not supported by the standard of care."   *D0123-133.*   Based on review of the administrative record, Prudential apparently decided that the Social Security determination had no relevance what so ever to its consideration of plaintiff's claim for disability benefits. Social Security determinations are "at least persuasive evidence of plaintiff's condition and should be considered."  *Schully* at 685; *see also, Gellerman v. Jefferson Pilot Financial Ins. Co.*, 376 F.Supp.2d 724, 735 (S.D.Tex. 2005) (noting that "no court has held that an SSA determination is completely irrelevant").  As demonstrated by the administrative record, Prudential  has shown a strong indicia of culpability or bad faith by its actions and inactions in the handling of Tesch's claims for disability benefits.  The Court finds that the first *Bowen* factor weighs heavily in favor of awarding attorney's fees to plaintiff.

In considering the second *Bowen* factor, the ability of Prudential to satisfy an award of attorney's fees, there is no evidence to suggest that Prudential would be unable to afford the payment of reasonable attorney's fees.  Moreover, the Court takes judicial notice that The Prudential Insurance Company of America is one of the major insurance companies in the United States.  The Court finds that the second *Bowen* factor favors awarding attorney's fees to plaintiff.

---

[12](...continued)
physician, Dr. Trotter, to *presumably* support its denial of plaintiff's disability benefits.

As to the third *Bowen* factor, whether an award of attorney's fees against Prudential would deter other persons acting under similar circumstances, the Court finds that rendering an award of attorney's fees in this case may very well cause Prudential and other insurers to improve upon similar claim review processes to the benefit of many insureds.  *See, Servat v. Am. Heritage Life Ins. Co.*, 2007 WL 2480342, at *21 (E.D.La. 2007) (J. Engelhardt). Thus, the third *Bowen* factor favors awarding attorney's fees to plaintiff.

The fourth *Bowen* factor, whether plaintiff sought to benefit all participants and beneficiaries of her ERISA plan or to resolve a significant legal question regarding ERISA, must be answered in the negative.  It is beyond question that plaintiff is seeking to protect her own interests in this matter.  Even though her arguments may benefit all participants of her Plan, she did not seek to benefit all participants of the Plan nor does she present a significant legal question outside of that related to her own claim.  Thus, the fourth *Bowen* factor does not favor an award of attorney's fees to plaintiff.

As to the fifth *Bowen* factor, the relative merits of the parties' positions, the Court thoroughly analyzed the administrate record in reaching its decision that Prudential abused its discretion in denying Tesch's disability benefits.  Based on that analysis, the Court finds that the fifth *Bowen* factor weighs heavily in awarding attorney's fees to plaintiff.

Given the entirety of the administrative record before the Court and giving due consideration to the *Bowen* factors as set out with particularity hereinabove, the Court will exercise its discretion under ERISA section 502(g), 29 U.S.C. § 1132(g)(1), and will award reasonable attorney's fees and the costs of this proceeding to plaintiff.

### VI.  Prejudgment Interest

The Court also finds that plaintiff is entitled to prejudgment interest on her award.  "An award of prejudgment interest is permissible (1) if the federal statute creating the cause of action does not preclude such interest, and (2) if an award of prejudgment interest would further the policies

28.

underlying the statute.  *See, Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir.1994); *Transitional Learning Co. v. Metropolitan Life Ins. Co.*, 913 F.Supp. 504, 508 (S.D.Tex.1996).  When these two criteria are met, the court has discretion to award prejudgment interest.  *See Carpenters* at 1288 (citing *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 392 (5th Cir.1989)."  *Roig v. Ltd. Long Term Disability Program*, 2000 WL 1146522, at *15 (E.D.La. 2000) (J. Vance).  Although the relevant provision of ERISA, 29 U.S.C. § 1132(g) (1), is silent on the matter, the Court may exercise its discretion to award prejudgment interest on ERISA benefits.  *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir.1991) ("an award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation"); *see also, Roig*  at *15 (holding same).  State law guides the Court's discretion in determining the interest rate as well as the date that the interest begins to accrue.  *See id.; Carrabba v. Randalls Food Mkts.*, 145 F.Supp.2d 763, 775 (N.D.Tex.2000), aff'd, 252 F.3d 721 (5th Cir.2001).

"The award of prejudgment interest 'is based on the equitable grounds that an injured party should be made whole.' "  *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1330 (5th Cir.1994). In the context of ERISA, awards of prejudgment interest are justified as furthering the congressional policies embodied in the act.  *Hansen*, 940 F.2d at 984 n. 11.  In this case, to disallow prejudgment interest would work an injustice.  Plaintiff was denied benefits for almost a decade.  "When benefits are paid only after the date on which the beneficiary was entitled to receive them under the terms of the plan, the beneficiary has not received the full value of what was promised and, to the same degree, the plan has realized an unjust enrichment (assuming the lateness was unjustified).   An award of interest in such circumstances serves as an equitable make-whole remedy."  *Dunnigan v. Metro. Life Ins. Co.*, 277 F.3d 223, 229 (2d Cir.2002); *see also Coxson v. Commonwealth Mortgage Co. of Am.*, 43 F.3d 189, 192 (5th Cir.1995) ("The Supreme Court stated that prejudgment interest 'is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.' ")

(quoting *Blau v. Lehman*, 368 U.S. 403, 414 (1962)).  As the Court has found that Prudential's denial of Tesch's claim for benefits was arbitrary and capricious, Prudential would be unjustly enriched were plaintiff not awarded prejudgment interest and Tesch would not receive the full value of what was promised.

The Court will thus exercise its discretion and award plaintiff interest on the benefits award in accordance with Louisiana Revised Statute 9:3500, from the date the Plan Administrator denied plaintiff's application for benefits, July 1, 2002, from the date each payment was due under the Plan until the date of payment, at the rate effective on the date each payment was due as set by Louisiana Revised Statute 13:4202.

## VII.  Conclusion

Based on the foregoing, plaintiff's motion for summary judgment will be granted and Prudential's motion for summary judgment will be denied.  Accordingly, plaintiff's past and future long term disability benefits are to be paid subject to such offsets as are permitted in the Plan, plaintiff's claim for reasonable attorney's fees and costs will be granted and the Court will award pre-judgment interest on plaintiff's benefits award,  in accordance with Louisiana Revised Statute 9:3500.